## Wilson v. Letteer

*Peter McNamara,* for plaintiff.
*Howard Wishnoff,* for defendant.

ROSENWALD, *J.,* March 11, 1991—This case arose out of an automobile accident between plaintiff, Samuel Wilson, and defendant, James Letteer, on November 18, 1986. Plaintiff and defendant dispute liability.

At the time of the accident, plaintiff was driving a 1976 Ford LTD which was both unregistered and uninsured. Defendant, James Letteer, was driving an insured vehicle at the time of the accident. While there is a dispute as to the issue of liability, the parties both agreed that Mr. Wilson was operating his motor vehicle without the proper financial responsibility as required by the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq. In this action, plaintiff is seeking damages for pain and suffering and other non-economic damages. Defendant, prior to the date of trial, filed a motion for summary judgment seeking to preclude the plaintiff from recovering non-economic damages.

Defendant, in his motion for summary judgment, asserts that the Motor Vehicle Financial Responsi-

bility Law mandates that all owners of registered and unregistered motor vehicles must purchase or acquire at least the minimum financial responsibility required. See 75 Pa.C.S. §1702. Defendant further contends that the plaintiff's willful failure to comply with the Motor Vehicle Financial Responsibility Law places plaintiff outside the class of persons who can recover for injuries resulting from automobile accidents.

Plaintiff, on the other hand, asserts that the Motor Vehicle Financial Responsibility Law does not preclude an uninsured motorist, injured as the result of an automobile accident, from pursuing a claim for non-economic damages. Plaintiff contends and admits that the Motor Vehicle Financial Responsibility Law only precludes an uninsured owner of a motor vehicle from recovering first-party benefits.

## DISCUSSION

The issue before this court is whether the Motor Vehicle Financial Responsibility Law, hereinafter the act, precludes the owner of an uninsured motor vehicle from recovering non-economic damages against a third-party tort-feasor for injuries arising out of the use and maintenance of an automobile.

The purpose of the act is to require all owners of motor vehicles, which are required to be registered in this Commonwealth, to be financially responsible. *Mowery v. Prudential Property & Casualty Insurance Company,* 369 Pa. Super. 494, 535 A.2d 658 (1988). Under the act, an owner of a motor vehicle must be able to respond to damages for liability.[1] An owner of a motor vehicle who fails to

---

1. The definition of financial responsibility under section 1702 of the act is as follows: "The ability to respond in damages for liability on account of accidents arising out of

obtain the requisite financial responsibility is in derogation of his duties as a responsible citizen of this Commonwealth and is in violation of the law. Moreover, an uninsured motorist poses a threat to the integrity of the insurance system because the uninsured motorist consumes the benefits of liability insurance without contributing toward their expense.

To help foster the goal of promoting financial responsibility among motorists, the state legislators have enacted licensing and registration requirements which mandate that all registration applicants provide the Department of Transportation with self-certification of financial responsibility.

A person registering his or her motor vehicle in this Commonwealth must show proof of insurance in order to receive a valid registration card and the appropriate license and tag. 75 Pa.C.S. §1305. Proof of insurance must include the name of the insurance company which is insuring the subject vehicle, the policy number, its effective date and the expiration date of the policy of insurance insuring the vehicle. 75 Pa.C.S. §1305(d), as amended 1989, H.B. No. 121.[2] Accordingly, the failure to exhibit self-certification of financial responsibility will result in the denial of a vehicle registration, thereby precluding the applicant from operating the motor vehicle upon the highways of this Commonwealth. 75 Pa.C.S. §1306, as amended February 7, 1990, Act No. 1990-06, effective in 60 days from enactment.[3]

---

maintenance or use of a motor vehicle in the amount . . ."

2. Section 1305(d) is a clarification of the pre-existing statute which required self-certification of financial responsibility.

3. Although the amendments to Act 1990-06, regarding vehicle registration and proof of financial responsibility, were adopted after this cause of action arose, the amendments are illustrative for the purpose of showing the intention of the

The act mandates financial responsibility for all owners of motor vehicles, nonetheless, many motorists in this state and especially in Philadelphia County operate their vehicles without the requisite insurance. Furthermore, the practice in Philadelphia is for the owner of a motor vehicle to register their motor vehicle with the Department of Transportation, show valid proof of financial responsibility, and subsequently cancel their insurance policy or fail to pay their premiums during the term of the vehicle registration. This unlawful practice is an act of fraud and must be addressed with stronger legislation and enforcement if the integrity of our automobile insurance system is to remain intact.

The legislators, aware of the extreme number of uninsured motorists who operate their vehicles upon our state highways, limit the amount of damages recoverable by an uninsured motorist.

Section 1714 of the act specifically precludes the owner of a currently registered uninsured motor vehicle from recovering first-party benefits.[4] Section 1714 of the act has been interpreted by our appellate courts to preclude an uninsured owner of a currently registered motor vehicle from recovering first-party benefits, regardless of his or her involvement in the underlying incident. *DeMichele v. Erie Insurance Exchange*, 385 Pa. Super. 634, 561 A.2d 1271 (1989).

legislators. The new amendments, sections 1305(d) and 1306, illustrate that the legislators intended for all owners of motor vehicles to acquire financial responsibility.

4. Section 1714 also applies to uninsured owners of unregistered motor vehicles, like plaintiff in the present action. Otherwise, an unreasonable and absurd result would occur if the act would allow the owner of an unregistered motor vehicle to be eligible for first-party benefits. Such a result would be absurd, because it is illegal to drive an unregistered motor vehicle upon our state highways. See 75 Pa.C.S. §1301.

This preclusion is rational because it "fosters the goal of promoting financial responsibility among motorists." *Pellot v. D&K Financial Corporation,* 9 D.&C. 4th 507, 510 (1991), quoting *Mowery v. Prudential Property and Casualty Insurance Company,* 369 Pa. Super. 494, 502, 535 A.2d 658, 663 (1988). Moreover, the preclusion of first-party benefits to uninsured motorists under section 1714 of the act is designed to "reduce the number of uninsured motorists consuming the benefits of liability insurance without contributing toward their expense." *Blair v. Travelers Insurance Co.,* 8 D.&C. 4th 157, 159 (1990), quoting *Kresge v. Keystone Insurance Company,* 389 Pa. Super. 548, 567 A.2d 739 (1989).

Furthermore, this court, in consonance with the intent of the legislature, *recently held* that section 1722[5] does not permit an ineligible claimant under section 1714 of the act to plead, prove or introduce into evidence his/her medical bills and wage losses. *Pellot, supra* at 514. This court reasoned that since the legislature intended to exclude uninsured registered owners of motor vehicles from recovering first-party benefits, an unreasonable and absurd result would occur if an ineligible claimant under section 1714 of the act would be permitted to plead,

---

5. "§1722. *Preclusion of pleading, proving and recovering required benefits*

"In any action for damages against a tort-feasor arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in section 1711 (relating to required benefits) or the coverage set forth in section 1715(a)(1.1) (relating to the availability of adequate limits) shall be precluded from pleading, introducing into evidence or recovering the amount of benefits paid or payable under sections 1711 or 1715(a)(1.1). This preclusion only applies to the amount of benefits set forth in sections 1711 and 1715(a)(1.1)."

prove and introduce into evidence his/her medical bills and wage losses under section 1722. *Id.* at 514.

The legislature further reduced the economic damages recoverable by an uninsured motorist by precluding all uninsured owners of motor vehicles from recovering any benefits under the Assigned Claims Plan, 75 Pa.C.S. 1752(a)(3). Under section 1752(a)(3) an owner of an uninsured motor vehicle required to be registered in this Commonwealth is ineligible to receive benefits from the Assigned Claims Plan. The Superior Court reasoned that this preclusion is reasonable because ''[u]ninsured owner-operators of motor vehicles should not be guaranteed the same benefits afforded to motorists who obtain the mandated insurance coverage. If such protection is made available to uninsured owner-operators who do not pay premiums, insurers' rising costs would necessitate increased insurance rates to the disadvantage of responsible drivers who purchase insurance policies.'' *Johnson v. Travelers Insurance Company,* 343 Pa. Super. 560, 574, 495 A.2d 938, 945 (1985); in accord, *Armstrong v. Pennsylvania Assigned Claims Plan,* 356 Pa. Super. 454, 514 A.2d 947 (1986).[6]

The legislative mandate that all motorists must be financially responsible is evident from the strict registration requirements. Moreover, the intent of the legislature that all motorists should be financially responsible becomes even clearer when the legislature specifically limits an injured persons' right to collect first-party benefits.

---

6. Although the decision in *Johnson* was based on the old No-fault Act, the rationale in *Johnson* for excluding benefits under the assigned claims plan under the No-fault Act, 40 P.S. §1009.101 et seq. (repealed) is equally applicable to the assigned claims plan found at 75 Pa.C.S. §1725 et seq.

In the present action, plaintiff, Samuel Wilson, was the driver of an *unregistered* and *uninsured* motor vehicle at the time of the underlying motor vehicle accident. Defendant was the owner of a registered insured motor vehicle at the time of the accident. Defendant filed a motion for summary judgment seeking to preclude plaintiff from recovering non-economic damages.

"Summary judgment [will be granted] 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Graf v. State Farm Insurance Company,* 352 Pa. Super. 127, 507 A.2d 414 (1986).

The issue of whether plaintiff, an unregistered and uninsured motorist injured as the result of his own contributory negligence or a third party's negligence, is precluded from recovering non-economic damages, is one of first impression in this Commonwealth.

When the present cause of action arose, the Motor Vehicle Financial Responsibility Law was silent as to whether an unregistered and uninsured motorist, injured while operating his motor vehicle illegally upon our state highways, was precluded from bringing an action for pain and suffering and other non-economic damages.[7] When "construing a

---

7. Under the new amendments to the act, which took effect on February 7, 1990, after this cause of action arose, an uninsured driver is deemed to have taken the limited tort option, thus he is precluded from recovering non-economic damages, absent a serious injury. See 75 Pa.C.S. §1705(a)(5). Therefore, under the new act, an uninsured motorist who does not suffer a "personal injury resulting in death, serious impairment of body function or permanent serious disfigurement" is precluded from recovering first-party benefits and non-

statute which is not explicit, we are required to presume that the General Assembly intended the entire statute to be effective, and that the General Assembly did not intend a result which is absurd or unreasonable." *Pennsylvania Public Utility Commission v. Commonwealth of Pennsylvania,* 23 Pa. Commw. 566, 574, 353 A.2d 887, 891 (1976). Moreover, when ascertaining the intention of the General Assembly in the enactment of a statute it is presumed that the General Assembly intends to favor the public interest as against any private interest. See 1 Pa.C.S. §1922(5); *Commonwealth v. Miller,* 469 Pa. 24, 364 A.2d 886 (1976).

In order to ascertain the intent of the legislature, this court must presume that General Assembly intended to favor the public interest against any private interest.

To enhance the integrity of the automobile insurance system and to promote the public interest, the legislature mandated that all persons driving upon our state highways should be able to "respond to damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle." 75 Pa.C.S. §1702. Furthermore, the legislature enacted severe sanctions for failing to operate on the highways without the requisite financial responsibility. For example, the legislature mandated that a person who fails to show proof of financial responsibility following an accident is subject to the revocation of the driving privilege and his vehicle registration. 75 Pa.C.S. §1785.

Accidents between an insured driver and an uninsured driver are common in this county. Ironically, the unfortunate occurrence of an automobile accident between an insured driver and an unin-

---

economic damages, except under the few exceptions mentioned in section 1705(d)(1)(i)-(iv).

sured driver may act as an economic windfall for the latter and as an economic disadvantage to the former.

When an uninsured motorist is injured due to an accident, the cost of recovery and litigation shifts to the insured driver and the insured community at large. As a plaintiff, the uninsured motorist can seek counsel on a contingent fee basis, thus he bears no risk in litigating the matter. Furthermore, if the uninsured driver is found contributorily negligent or completely at fault, the insured in most cases cannot turn to the uninsured driver but must turn to his own insurer for uninsured motorist coverage.[8] Moreover, the cost of recovery and litigation shifts to the insured driver because any non-economic damages due to the injured uninsured plaintiff will be drawn from the pool of insurance funds created by the insured driver and those like him.

The General Assembly enacted the Motor Vehicle Financial Responsibility Law to benefit the public interest against any private interest. The legislature intended for all persons who drive upon our highways to be financially responsible. Coupled with this intent, the General Assembly also intended that only those who could respond to damages for liability due to accidents arising out of the maintenance or use of an automobile could recover at least the minimum coverage set forth in the act.

8. "The uninsured, as a group, are least responsible financially, and so unlikely to be able to pay judgment. It is also undoubtedly true that uninsured drivers on the highway are those who tend on the whole to be driving unsafe vehicles, to be the most slipshod, law-violating and reckless, and to cause a disproportionately large percentage of the accidents. It is, in short, those who are unable to pay for the harm they do, who are most likely to do harm." Kline and Pearson, *The Problem of Uninsured Motorist* (1951), quoted in *Prosser and Keeton on Torts,* §83, at 597 (5th ed. 1986).

Allowing an uninsured motorist to recover non-economic damages against an insured third-party tort-feasor is contrary to the intent and purpose of the Motor Vehicle Financial Responsibility Law.

This court holds that an unreasonable and absurd result would occur if an uninsured motorist would be allowed to collect non-economic damages from an insured third-party tort-feasor when the uninsured motorist is unable to respond to damages for liability due to an accident which arose out of the maintenance or use of an automobile.

To help further the public interest and deter persons from driving upon our highways without financial responsibility this court finds in harmony with the intent of the General Assembly that the public interest would best be served if the uninsured motorist is precluded from bringing an action against an insured motorist for pain and suffering and other non-economic damages.

## CONCLUSION

Based on the foregoing analysis and the facts before this court, this court finds that there is no genuine issue of material fact and as a matter of law and public policy, defendant's motion for summary judgment is granted.